UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES

– against –

LUIS ANGEL RAMOS,

          Defendant.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

03-cr-315 (ERK)

KORMAN, *J.*:

On June 10, 2004, Defendant Luis Angel Ramos ("Ramos") was convicted in this Court after a jury trial of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) [Count I]; conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a) [Count III]; and brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) [Count IV].[1] Ramos' offense conduct related to his involvement between 1990 and 1999 in the "Woodbine Crew," a criminal enterprise that operated in Brooklyn, New York. The Woodbine Crew generated money for its members and associates through drug trafficking and robbery. As the evidence at trial revealed, the Woodbine Crew's activities included murder, assault, torture, kidnapping, and arson, which the crew specifically used against targeted rival criminal organizations and

---

[1] Ramos was not named in Count II. *See* PSR ¶ 16.

1

drug traffickers. On September 30, 2005, Ramos was sentenced to life imprisonment on Count I, 140 months' imprisonment on Count III, to be served concurrently, and 84 months' imprisonment on Count IV, to be served consecutively to Counts I and III. Ramos is now 56 years old, and is currently serving his sentence at USP Lee in Virginia. Characterizing the instant motion (the "Motion") as one for compassionate release, Ramos, proceeding *pro se*, sets forth two grounds: the life-saving health aid he provided to a corrections officer in 2008 at the state facility in which he was then incarcerated, and Ramos' current health conditions.

For the reasons set forth below, modification of Ramos' sentence with respect to Count I from life imprisonment to 420 months' imprisonment is warranted.

## LEGAL STANDARD

The First Step Act provides that a court may modify a term of imprisonment where: (1) the defendant has fully exhausted his administrative remedies with the Bureau of Prisons;[2] (2) extraordinary and compelling reasons warrant such a reduction; and (3) it has considered the factors set forth in 18 U.S.C. § 3553(a), which on balance weigh in favor of such relief. *See* 18 U.S.C. § 3582(c)(1)(A). A district court is accorded broad discretion in this area, "as in all sentencing matters." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("It bears remembering

---

[2] The United States Attorney does not dispute that Ramos exhausted his administrative remedies. *See* Gov't Opp. to Def. Mot. for Compassionate Release, ECF No. 192, at 4 n.1.

that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence."); *cf. United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (*en banc*) (noting a district court's "very wide latitude" in sentencing).

## DISCUSSION

### I. Ramos Saving the Life of a Corrections Officer Constitutes an Extraordinary Reason Warranting a Sentence Modification

In 2008, while incarcerated at the New York State Sing Sing Correctional Facility, Ramos administered potentially life-saving aid to Steven Luciano, a Corrections Officer at the prison who had suffered a serious injury during an accident. *See* Motion Ex. B (Affidavit of Officer Luciano). Officer Luciano was closing a glass window while conducting a security check, and accidentally put his right hand and arm through the glass, puncturing an artery. *Id*. Unable to use his radio to call for assistance, Officer Luciano shouted for help until Ramos and another inmate heard him. *Id*. Ramos told the other inmate to go for help, and then tore his shirt to use as a tourniquet. Motion Ex. C (Affidavit of Luis Angel Ramos). Ramos secured the tourniquet around Officer Luciano's arm and aided him until medical help arrived. *Id*. At the hospital, Officer Luciano was informed by doctors that he was "lucky to be alive" due to the amount of blood he had lost. Motion Ex. B.

Ramos' extraordinary actions likely saved Officer Luciano's life. While this incident by itself may not constitute sufficient grounds to justify compassionate

3

release, it nevertheless is compelling enough as a factor that may be considered under 18 U.S.C. § 3553(a) to warrant a modification of Ramos' life sentence.[3]

## II. The 3553(a) Factors Favor a Modification of Ramos' Sentence

Section 3553(a) obligates the court to "weigh the prospect of release against the interests of continued incarceration—namely deterrence, punishment, and incapacitation." *United States v. Copeland*, 2020 WL 2537250, at *1 (E.D.N.Y. May 19, 2020). The statute provides that a sentence must reflect a defendant's personal "history and characteristics" and be "sufficient, but not greater than necessary" to "reflect the seriousness of the offense," "provide just punishment," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C).

When Ramos finishes serving his sentence as modified, he will be over 70 years old, and will have served at least 35 years in custody—if not longer—as a consequence of his underlying offenses.[4] Ramos' age at the time of his eventual

---

[3] In his Motion, Ramos states that he has been diagnosed with various medical ailments, including malignant melanoma, basal cell carcinoma, ischemic heart disease, hyperlipidemia, diaphragmatic hernias, pre-diabetes, and "suspected" glaucoma. *See* Mot. at 11-12. The Bureau of Prisons has designated Ramos "Care Level 1," meaning that he is "less than 70 years of age and [is] generally healthy" and that he "may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." *See Care Level Classification for Medical and Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance May 2019*, at 2 (available at https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf). Ramos' health conditions—considered individually or collectively—do not constitute sufficiently compelling extraordinary circumstances for the purposes of evaluating his motion.

[4] Ramos has spent the last 26 years in prison. *See* Mot. at 18. For clarity, the date of Ramos' federal sentence has been computed by the Bureau of Prisons to run from September 30, 2005—the date on which he was sentenced. *See* Mot. Exhibit G (BOP Summary Reentry Plan – Progress Report dated July 14, 2021). Defendants typically get credit for pretrial detention, but this is not always

release will greatly minimize the risk of recidivism. *See* U.S. Sentencing Comm'n, *Older Offenders in the Federal System*, 55 (July 2022) (stating that rearrest rates fell to 10.4% for defendants aged 70 or older at the time of their release); *see also* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 23, 30 (Dec. 2017) (noting that recidivism rates fell to less than 20% for offenders who are over 60 years old at the time of their release).

Moreover, at the time that he was sentenced, Ramos was already serving a New York State sentence of ten years to life for first degree robbery. Ramos was released from New York's Sing Sing Correctional Facility into federal custody on June 16, 2015, and is subject to numerous special conditions of release for the rest of his life as a result of his state sentence. *See* Mot. Exhibit H (New York State Release Papers). These conditions provide that Ramos: will seek, obtain, and maintain employment and/or an academic/vocational program; will submit to substance abuse testing; will participate in treatment programs for substance abuse and alcohol abuse; will not consume alcoholic beverages nor frequent any establishment where alcohol is sold or served as its main business without permission of his parole officer; will abide by a curfew, and will participate in anti-

---

the case. Ramos' federal pretrial detention was credited to a state sentence that he was then serving for first degree robbery. Pretrial detention credit cannot be credited to two sentences. *See* 18 U.S.C. § 3585(b). Because I imposed Ramos' sentence to run concurrently, once the federal sentence was imposed, the federal sentence began to run concurrently with Ramos' state sentence.

aggression/anti-violence counseling. *Id.* at 3. In addition to Ramos' age, these special conditions similarly mitigate the risk of recidivism.

Finally, the Inmate Progress Reports and Education Reports from Ramos' time at both Sing Sing and USP Lee demonstrate that Ramos has been committed to leading a productive life while in prison by pursuing his education through self-study and vocational training. *See* Mot. Exs. J (Inmate Progress Reports); K (State of New York DOC Vocation Education Reports); L (USP Lee Education Courses). In fact, Ramos has only had three disciplinary infractions since 2004, and as of July 2021, had otherwise "maintained clear conduct for almost 5 years." Mot. Ex. G at 2. It is in this context of self-improvement that Ramos' potentially life-saving aid to Officer Luciano should be assessed and credited as persuasive evidence of Ramos' rehabilitation and altered moral character inconsistent with a life of future crime. Considering this history and Ramos' upward trajectory toward rehabilitation while in custody, a life sentence is greater punishment than necessary to satisfy the considerations of Section 3553(a). *See United States v. Leonard*, 844 F.3d 102, 116-17 (2d Cir. 2016) (noting that a district court's discretion when considering a reduction in sentence "can be informed by post-sentencing behavior" (citing U.S.S.G. § 1B1.10 cmt. n.1(B)(iii)).

In light of the seriousness of Ramos' crimes and the possibility of recidivism, however, granting Ramos' immediate release from prison would not be appropriate.

6

Modifying Count I of Ramos' sentence to 35 years is consistent with other sentences within this Circuit for comparable defendants, *i.e.*, members of drug and/or racketeering crews involved in brutal acts of violence, both in the original imposition of the sentence and in the context of sentence reductions.[5] For example, in *United States v. Glynn*, the court recently modified the life sentence of a drug defendant convicted of murder in aid of racketeering—a crime carrying more severe penalties than Ramos' offense conduct—to 420 months. *See* 2022 WL 562652, at *7-8 (S.D.N.Y. Feb. 24, 2022). Therefore, modifying Ramos' sentence in a manner that will still require him to serve substantial time before his release properly balances the Section 3553(a) factors by crediting Ramos' rehabilitation, minimizes the risk that Ramos will reoffend, and comports with district court and Circuit precedent. *See, e.g.*, *United States v. Lake*, 2022 WL 17083288, at *1-2 (E.D.N.Y. Nov. 18, 2022) (reducing sentence of violent drug trafficker involved in multiple murders from 540 months to 468 months, in part due to defendant's "efforts at rehabilitation"); *United States v. Minicone*, 521 F. Supp. 3d 163, 169 (N.D.N.Y. 2021) (reducing sentence of member of violent racketeering crew from 480 months to 377 months where the defendant's "ill health and advanced age, when viewed in

---

[5] Moreover, as noted above, Ramos' 84-month sentence on Count IV is to be served consecutively to his sentence on Counts I and III. The imposition of this sentence as consecutive was mandatory. *See* ECF No. 167 at 23:4-7 (Sentencing Transcript); *see also* ECF No. 191 at 41 (Presentence Report).

7

light of his spotless disciplinary record, all indicate that his release into the community will not pose a danger to anyone."); *see also United States v. Geraldo*, 687 F. App'x 101, 106-07 (2d Cir. 2017) (summary order) (affirming 420 month sentence as reasonable for violent gang defendant involved in multiple murders); *United States v. Evans*, 633 F. App'x 55, 57 (2d Cir. 2016) (summary order) (affirming 420 month sentence as reasonable for crack cocaine racketeer responsible for a murder and shootings).

## **CONCLUSION**

Ramos' sentence is modified with respect to Count I from life imprisonment to 420 months' imprisonment. All other aspects of his sentence remain in full force and effect.

**SO ORDERED.**

Brooklyn, New York
February 2, 2023

*Edward R. Korman*
Edward R. Korman
United States District Judge